IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

CIVIL NO. 1:03CV179

DAVID B. SWANSON,              )
                              )
            Plaintiff,         )
                              )
       vs.                     )          **MEMORANDUM AND ORDER**
                              )
MEDICAL ACTION INDUSTRIES,     )
INC.,                          )
                              )
            Defendant.         )
_____ )

THIS MATTER is before the Court on the Defendant's motion for summary judgment

which is opposed by the Plaintiff. For the reasons stated herein, the Defendant's motion is

granted and this action is dismissed.

## I. SUMMARY JUDGMENT STANDARD OF REVIEW

Under the Federal Rules of Civil Procedure, summary judgment shall be awarded
"if the pleadings, depositions, answers to interrogatories, and admissions on file,
together with the affidavits, . . . show there is no genuine issue as to any material
fact and that the moving party is entitled to a judgment as a matter of law." As the
Supreme Court has observed, "this standard provides that the mere existence of
*some* alleged factual dispute between the parties will not defeat an otherwise
properly supported motion for summary judgment; the requirement is that there be
no *genuine* issue of *material* fact."

*Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 519 (4th Cir. 2003) (quoting

Fed. R. Civ. P. 56(e) and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).

A genuine issue exists if a reasonable jury considering the evidence could return a verdict for the nonmoving party. *Shaw v. Stroud*, **13 F.3d 791, 798 (4ᵗʰ Cir. 1994) (citing *Anderson, supra*).** "Regardless of whether he may ultimately be responsible for proof and persuasion, the party seeking summary judgment bears an initial burden of demonstrating the absence of a genuine issue of material fact." *Bouchat*, **346 F.3d at 522 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).** If this showing is made, the burden then shifts to the non-moving party who must convince the Court that a triable issue does exist. *Id.*

> A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denial of her pleadings," but rather must "set forth specific facts showing that there is a genuine issue for trial." Furthermore, neither "[u]nsupported speculation," nor evidence that is "merely colorable" or "not significantly probative," will suffice to defeat a motion for summary judgment; rather, if the adverse party fails to bring forth facts showing that "reasonable minds could differ" on a material point, then, regardless of "[a]ny proof or evidentiary requirements imposed by the substantive law," "summary judgment, if appropriate, shall be entered."

*Id.* **(quoting Fed. R. Civ. P. 56(e) and *Felty v. Graves-Humphreys Co.*, 818 F.3d 1126, 1128 (4ᵗʰ Cir. 1987)) (other internal citations omitted).** Moreover, in considering the facts for the purposes of this motion, the Court will view the pleadings and material presented in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, **475 U.S. 574 (1986).**

## II. FINDINGS OF FACT

The Plaintiff was initially hired by the Defendant in April 1991 and worked there until his discharge on September 5, 2001. **Complaint, filed July 29, 2003, ¶¶ 7, 13.** In 1997, the Plaintiff fractured his neck during an accident which did not occur at work and learned that he

had osteoporosis. *Id.*, ¶ 9. The Plaintiff testified during his deposition that the Defendant's management knew about his condition for years and accommodated him until the beginning of 2001 after the plant was sold and the "Lean Manufacturing Principles" were adopted by management. *Id.*, ¶ 8; **Exhibit 1, Deposition of David B. Swanson, *attached to* Defendant's Motion for Summary Judgment, filed June 18, 2004, at 266.** By that time, the Plaintiff had been promoted to the position of supervisor and had not been required to do heavy manual labor. **Complaint, *supra*.** When the new principles were adopted, however, in addition to being a supervisor, he was also required to work directly with the team to which he was assigned and this required him to perform manual labor. *Id.* In this position, the Plaintiff was the second shift supervisor and team lead responsible for "performing all team lead activities . . . and serving as salary/ management representative[.]" **Exhibit 6, Personnel Memorandum, *attached to* Defendant's Motion.**

The Plaintiff testified that by the summer of 2001, the osteoporosis had become so debilitating that he could not move in the morning and he literally had to crawl to the bathroom. **Swanson Deposition, at 256.** He was taking multiple pain medications and was only able to work because they would "start to do their magic[.]" *Id.*, **at 257.** In fact, he was self- medicating by taking pain medication more often than had been prescribed. *Id.*, **at 293.** Nonetheless, the Plaintiff had not told anyone in management at work that he was unable to do the lifting requirements until he saw his physician in June 2001. *Id.*, **at 257.** On June 12, 2001, the Plaintiff received a statement from his treating physician which limited his exertional levels. **Exhibit 3, Letter from Virginia Barnhardt, M.D., *attached to* Defendant's Motion.** Dr. Barnhardt wrote that the Plaintiff had "a physical disability from his multiple compression

fractures. Therefore, from a medical standpoint, he is not to lift over 25 pounds or in fact move objects over 25 pounds." *Id.* The Plaintiff provided this note to his supervisor, Dennis Knaupp, who asked him how he would be able to do his job. **Swanson Deposition, at 274.** The Plaintiff responded that he would do the best that he could and described his supervisor as "walk[ing] off in a huff." *Id.*, **at 275.** The Plaintiff did not report this incident to anyone and continued to attempt to do his work because he was afraid of losing his job. *Id.*, **at 275, 290, 293-94.** The Plaintiff took more medication and recruited other employees to assist him in his duties. *Id.*, **at 294.**

By August 2001, the Plaintiff obtained a second note from his physician which limited him to lifting 10 pounds. **Exhibit 5, Note from Virginia Barnhardt, M.D., dated August 13, 2001,** *attached to* **Defendant's Motion.** According to the Plaintiff, he gave this note directly to his supervisor who read it and then asked, "Well, what exactly does this mean?" **Swanson Deposition, at 303.** The Plaintiff replied, "Well, it means what it says." *Id.* The Plaintiff considered the supervisor's reaction to have been negative although nothing more was said. *Id.*

During a meeting on September 5, 2001, the Plaintiff was terminated; the reason given for his discharge was his failure to be a "team member." His termination became effective October 1, 2001. **Exhibit 6,** *supra.*

Plaintiff filed an application for social security disability benefits on November 16, 2001, and averred in that application that his disability onset date was September 5, 2001. **Exhibit 10, Decision of Paul C. Armitage, Administrative Law Judge (ALJ),** *attached to* **Defendant's Motion.** During a hearing in 2002 in connection with this application, the Plaintiff testified that he was in pain 24 hours a day, seven days a week, which at times was unbearable. *Id.*; **Swanson**

**Deposition, at 336-40.** It was necessary for him to lie down at least twice a day and he could only walk for 10 minutes at the time due to back pain and his multiple fractures. *Id.*; **Exhibit 10,** *supra.* The Plaintiff was unable to remember or think clearly as a result of his pain medications. *Id.*; **Swanson Deposition, at 333.** On September 22, 2003, the Plaintiff was found to be totally and permanently disabled for purposes of the Social Security Act by the ALJ who found he suffered from osteoporosis, multiple compression fractures, chronic mechanical back pain and depression. **Exhibit 10,** *supra.* The ALJ found the Plaintiff was unable to perform his past relevant work and had been disabled since September 5, 2001. *Id.*

At the time of his deposition in 2004, the Plaintiff admitted he was unable to work due to the combination of pain and the pain medications he takes, methadone and oxycodone.[1] **Swanson Deposition, at 342, 348, 350-51, 355 ("[Y]ou still are taking too much pain medication to be able . . . to function . . . appropriately at work because of the . . . combination of the Methadone and the OxyContin. Is that a fair statement? Yeah, I'd say that was fair.").** He described his past relevant work as involving manual labor approximately 75 percent of the work day in the form of (1) lifting and moving boxes weighing up to 55 pounds between 80 and 100 times during the work shift; (2) making boxes which contained packers weighing between 10 and 50 pounds up to six times during a shift; (3) pulling orders weighing up to 200 pounds from the warehouse to the production area three times per week via forklifts; and (4) putting rolls of material weighing up to 400 pounds on hand trucks and returning them to the warehouse at least once each shift. *Id.*, **at 37, 48, 50-57, 73-76.** However, during his

----

[1]In the Plaintiff's response to the motion for summary judgment, he disputes that he has ever taken OxyContin and claims the medication is oxycodone. The deposition transcript, however, reports the drug as OxyContin.

deposition, the Plaintiff admitted that even if the manual labor were not required, he could not perform the supervisory functions due to the amount of pain medication he was taking. *Id.*, at 351, 355. For example, the pain medications made him sleepy, tired and "a little goofy in the head[.]" *Id.*, at 337. The medications affected his ability to drive and operate machinery. *Id.* At the time of the deposition, he had been taking these medications consistently since his termination and described the pain as 24 hours a day and worsening all the time. *Id.*, at 337-38. While the Plaintiff was hopeful that a new drug he was taking might reverse the effects of his osteoporosis, he acknowledged that the impact of his pain medications would prohibit him from performing even a supervisory function. *Id.*, at 350-51.

## III. DISCUSSION

The Plaintiff's complaint is predicated on alleged violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12112(a) (ADA), which "prohibits a covered employer from discriminating 'against a qualified individual with a disability because of the disability of such individual.'" *E.E.O.C. v. Stowe-Pharr Mills, Inc.*, 216 F.3d 373, 377 (4th Cir. 2000) (quoting 42 U.S.C. § 12112(a)). To establish a *prima facie case* under the ADA, Plaintiff must show (1) that he has a disability; (2) that he is a "qualified individual" for the employment in question; and (3) that he was discharged because of his disability. *Id.* A "qualified individual with a disability" is defined as one "who, with or without reasonable accommodation, can perform the essential functions" of his job. 42 U.S.C. § 12111(8). Here, the Plaintiff filed a social security application averring that at the same time he claims he was discriminated against, he was totally disabled from work.

The mere act of applying for disability benefits does not estop a plaintiff from making a subsequent ADA claim. . . . "[D]espite the appearance of conflict that arises from the language of the two statutes, the two claims do not inherently conflict to the point where courts should" presume that "the claimant or recipient of . . . benefits is judicially estopped from asserting that he is a qualified individual with a disability." This is so because the two statutes "pursue different statutory purposes and require different, though related, inquiries into an individual's disability." For example, the ADA considers a plaintiff to be a qualified individual with a disability if he is able to perform the job in question with reasonable accommodation, whereas other statutes, like the Social Security Act, do not consider the possibility of reasonable accommodation when determining whether a claimant is disabled. However, because of the possibility of inconsistency, to avoid summary judgment, an ADA plaintiff who is shown to have claimed total disability in the context of another statutory scheme "is required to proffer a sufficient explanation for any apparent contradiction between the two claims." "[T]hat explanation must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good faith belief in, the earlier statement, the plaintiff could nonetheless perform the essential functions of [his] job, with or without reasonable accommodation."

*Fox v. General Motors Corp.*, 247 F.3d 169, 177 (4th Cir. 2001) (quoting *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 800-02, 807 (1999); *Feldman v. Am. Mem'l Life Ins. Co.*, 196 F.3d 783, 790 (7th Cir. 1999); *Stowe-Pharr*, 216 F.3d at 378). Thus, the Plaintiff is obligated to offer sufficient explanations "as to why he was both totally disabled, and so entitled to [social security] benefits, and a qualified individual with a disability entitled to bring a claim under the ADA." *Id.*, at 178. "Of course, the date of an adverse employment decision is the relevant date for determining whether a plaintiff is a 'qualified individual with a disability.'" *Stowe-Pharr Mills*, 216 F.3d at 379. Here, that date is September 5, 2001.

In response to the motion for summary judgment, the Plaintiff acknowledged that he could not perform the physical functions of the team lead job but claims that he could "possibly" perform the supervisory functions. **Plaintiff's Request to Deny Defendant's Memorandum in Support of Motion for Summary Judgment, filed June 28, 2004, at 9.** However, as noted

above, the Plaintiff testified both at his social security hearing and during his deposition that he could not perform that job while taking the medications required for his pain. In responding to the motion for summary judgment, an ADA claimant, like the Plaintiff here, must provide a legally adequate explanation; he cannot simply disavow a prior claim of total disability. *Lee v. City of Salem, Ind.*, 259 F.3d 667, 674-75 (7th Cir. 2001). He must, instead, explain how that earlier assertion of total disability was truthful and yet consistent with the ability to perform the essential functions of the job. *Id.* The Plaintiff here has failed to do so.

> [Plaintiff] "made a knowing decision upon his discharge to apply for disability benefits on the theory that he could not do the work." Although he applied for benefits several months after his termination, he made a sworn statement in his application that he was unable to work as of [September 5, 2001]. He may not now argue that he could in fact work as of that date, which would render false his statements to the Social Security Administration. Indeed, the record suggests that [Plaintiff] was truthful on his disability application and that he is a gravely ill man, one who continued working long past the point that others might have quit. Although [the court is] not unsympathetic to [Plaintiff's] difficult situation, he has not offered a sufficient explanation of the inconsistent positions taken in his claim for disability benefits and his ADA lawsuit.

*Devine v. Bd. of Comm'rs of Elkhart County*, 49 Fed. Appx. 57, 61-62 (7th Cir. 2002) (citing *Lee, supra*, at 677); *accord, Gilmore v. AT&T*, 319 F.3d 1042, 1047 (8th Cir.), *cert. denied*, 124 S. Ct. 405 (2003) ("In her Social Security benefits application and in her deposition testimony, Gilmore conceded that she could not perform the essential functions of her job[.] ... Gilmore has neither claimed that her statements were inaccurate, nor has she provided any evidence to reconcile her asserted inability to perform the essential functions of her job with her claim under the ADA."); *Holtzclaw v. DSC Communications Corp.*, 255 F.3d 254, 258-59 (5th Cir. 2001).

Moreover, while the Plaintiff claimed in his response to the motion for summary judgment that he could "possibly" perform the supervisory functions of his job, his deposition testimony during this action conflicts with that claim. A party cannot defeat summary judgment by providing an affidavit or statement conflicting with earlier sworn deposition testimony. *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 186 n.7 (4th Cir. 2001) (citing *Rohrbough v. Wyeth Labs., Inc.*, 916 F.2d 970 (4th Cir. 1990) ("[A] party against whom summary judgment is sought cannot create a jury issue by identifying discrepancies in his own account of the facts."); *Hernandez v. Trawler Miss Vertie Mae, Inc.*, 187 F.3d 432, 438 (4th Cir. 1999).

> As in any case in which a party attempts to create a genuine issue of fact by contradicting his own prior statement under oath, an ADA plaintiff who has obtained SSDI benefits by making a sworn statement to the effect that he is completely disabled and thus unable to work must confront and reconcile the apparent inconsistency between that assertion and his ADA claim, the premise of which is that he can work.

*Lee*, 259 F.3d at 674 (internal citations omitted).

Accepting the Plaintiff's claim that he could perform supervisory functions, he provides no explanation of how he could do so while in constant pain requiring substantial medication which impairs both his memory and ability to think clearly.[2] This statement "does not explain or even address how, in light of his assertions of disability, he was, in fact, qualified to perform the essential functions of the [] position." *Lane v. BFI Water Sys. of North America*, 257 F.3d 766,

---

[2]Plaintiff also claimed that in some point in the future he might be able to reduce his pain medication and thus, return to work. "A plaintiff may not prevail by demonstrating that he might have been able to perform the essential functions of the job at some time in the future. A plaintiff must show that he can perform the essential functions of the job at the time of the employment decision or in the immediate future." *Lamb v. Qualex, Inc.*, 33 Fed. Appx. 49, 57 (4th Cir. 2002) (citing *Myers v. Hose*, 50 F.3d 278, 283 (4th Cir. 1995)).

770 (8th Cir. 2001). "Therefore, there is no explanation in the record 'to warrant a reasonable juror's concluding that, assuming the truth of, or [the Plaintiff's] good faith belief in, the earlier statement, [he] could nonetheless perform the essential functions of [his] job.'" *Id.* **(quoting** ***Cleveland*, 526 U.S. at 807).** "*Cleveland* [*supra*] teaches that a plaintiff cannot change his story during litigation without a sufficient explanation for his inconsistent assertions." ***Holtzclaw*, 255 F.3d at 259.** Plaintiff has "therefore failed to create a material issue of fact whether he is qualified for the position he [held]."[3] *Id.*

## IV.  ORDER

**IT IS, THEREFORE, ORDERED** that the Defendant's motion for summary judgment is hereby **GRANTED** and this action is dismissed in its entirety by Judgment filed herewith.

**THIS** the _____ **2 3ʳᵈ** _____ day of November, 2004.

_____

**LACY H. THORNBURG**
**UNITED STATES DISTRICT COURT JUDGE**

---

[3]The Court notes, as well, that the Plaintiff did not show he was a qualified person for the job because his testimony in this litigation established that he could not perform the essential functions of the job as it existed on the date he was discharged. ***Tyndall v. Nat'l Educ. Ctrs., Inc. of California*, 31 F.3d 209, 213 (4th Cir. 1994).** In addition to the fact that he could not perform the physical functions of the job, he clearly testified that his pain medication clouded his memory and thought processes. *Myers, supra.*

United States District Court
for the
Western District of North Carolina
November 23, 2004


* * MAILING CERTIFICATE OF CLERK * *


Re:  1:03-cv-00179


True and correct copies of the attached were mailed by the clerk to the following:


     Mark J. Swerdlin, Esq.
     Shawe & Rosenthal, LLP
     Sun Life Bldg., 11th Floor
     20 S. Charles St.
     Baltimore, MD  21201

     Jonathan W. Yarbrough, Esq.
     Constangy, Brooks & Smith, LLC
     80 Peachtree Rd.
     Suite 208
     Asheville, NC  28803

     David B. Swanson
     126 Big Brown Rd.
     Mars Hill, NC  28754


cc:
Judge                          (✓)
Magistrate Judge               ( )
U.S. Marshal                   ( )
Probation                      ( )
U.S. Attorney                  ( )
Atty. for Deft.                ( )
Defendant                      ( )
Warden                         ( )
Bureau of Prisons              ( )
Court Reporter                 ( )
Courtroom Deputy               ( )
Orig-Security                  ( )
Bankruptcy Clerk's Ofc.        ( )
Other_____         ( )


Frank G. Johns, Clerk

Date:___11-23-04___          By:_____
                                  Deputy Clerk